Hubert Lee SMITH, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

Jan. 22, 1987.

Julie Namkin, Asst. Public Advoate, Dept. of Public Advocacy, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Kay Winebrenner, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Smith of murder and first-degree rape and sentenced him to life and twenty years respectively.

The questions presented are whether the trial judge properly overruled a motion for directed verdict of acquittal; whether it was proper to overrule a motion to compel the prosecutor's agreement and dismissal of the indictment; whether the statement of the defendant was the result of an improper custodial interrogation and should have been suppressed; whether the prosecution produced all the exculpatory evidence in its possession; whether the scientific procedure used in testing the laboratory samples was reliable; whether the chain of custody of the evidence was properly proven; whether the trial judge correctly denied a request for a change of venue; whether the evidence supported an instruction on tampering with physical evidence and whether the evidence supported an instruction on the lesser-included offense of criminal facilitation.

On July 18, 1977, the nude, dead body of the victim was discovered lying on the living room floor of her home. The autopsy revealed that she had been killed by a bullet fired into her chest and that she had been raped. The crime remained unsolved for six years.

In October of 1983, Smith, who was in the Laurel County jail on other charges, made a statement to the jailer and coroner admitting that he and another man were at the crime scene. He said the other man shot the victim and that he wiped up the blood and fingerprints and disposed of the gun. Several hours later he was taken to the State Police post where he reiterated his statement in the presence of his attorney. This appeal followed his conviction.

This Court affirms the judgment.

The trial court correctly overruled Smith's motion for a directed verdict because the evidence of rape was sufficient. Smith argues that he was entitled to a directed verdict because no evidence of the exact time of the rape was introduced. He contends that there is no way to determine whether the rape occurred prior to or after the shooting. On appeal this argument is improper because the issue was not properly preserved for appellate review. RCr 9.22.

Smith's reasoning is that a person is guilty of rape in the first degree when he engages in sexual intercourse with another person by forcible compulsion, KRS 510.-040(1)(a), and that a corpse is not a "person." *Gregory v. Allstate*, Ky.App. 618 S.W.2d 582, 583 (1981). Therefore, he argues that by not proving that the victim was alive while being raped the Commonwealth failed to prove each and every element of the offense beyond a reasonable doubt.

▆ Smith moved for a directed verdict on the rape charge and objected to the instruction on rape. The grounds for these objections were insufficient evidence of rape and not the rape of a dead body. The trial judge was never presented with the issue of whether the victim was raped before or after she was murdered. The 1974 Commentary to Chapter 510 of the Kentucky Revised Statutes states that sexual intercourse with a dead body is not penal-

ized as rape, but the offense is prohibited by the abuse of a corpse statute, KRS 525.120. This issue was never properly presented to the trial court. *Cavins v. Commonwealth*, Ky. 639 S.W.2d 766 (1982); *Hockenbury v. Commonwealth*, Ky. 565 S.W.2d 448 (1978).

The Commonwealth does not bear the burden of proving that a rape victim was alive when penetration occurred. Moreover, there is no question that the victim was alive when Smith began his assault on her. The autopsy revealed beating about the victim's face. This would certainly justify the jury's finding that Smith engaged in sexual intercourse by forcible compulsion. KRS 510.040(1)(a).

There was abundant evidence of a struggle. The victim suffered abrasions on the forehead, left shoulder and scalp as well as bruises on the scalp and the right little finger. Blood was splattered on the wall, curtains and ceiling. Physical evidence included the victim's clothes, a towel and an iron, all of which were bloody. A jury could reasonably infer from the evidence that the defendant struggled with the victim, raped her and then shot her to prevent discovery of his identity. Smith admitted returning to the residence to observe the victim and her sister in bathing suits. He claims that his companion's and his sole motivation for driving to the victim's home was sex.

The former wife of Smith testified that she learned of the crime from watching television. In view of the fact that there was no knowledge of the rape prior to the results of the crime lab report, the news merely reported the murder. However, that night, Smith informed his wife at that time of the rape. All of the circumstances provide a sufficient basis for the finding by the jury that Smith was guilty of rape.

The trial judge viewing the evidence in the light most favorable to the prosecution, was within his proper bounds to conclude that reasonable minds might find guilt beyond a reasonable doubt. The evidence of rape was sufficient and the case was prop-

erly submitted to the jury. *See Commonwealth v. Sawhill*, Ky. 660 S.W.2d 3 (1983).

Smith next argues that he was denied due process when the trial judge overruled his motion to compel the prosecution's agreement to dismiss the indictment. Smith's contention is clearly refuted by the record. The Commonwealth did not agree to grant immunity on all charges to Smith in exchange for his statement. The prosecuting attorney agreed that Smith had immunity to "criminal facilitation after the fact", but not to any other charges. Therefore the trial judge overruled the motion to dismiss the indictment because no substantial evidence of agreement to total immunity was demonstrated.

Smith's first statement made at the Laurel County jail to the coroner and jailer, refers to an agreement from the prosecutor regarding immunity. Prior to the introduction in evidence of the second statement made at the state police headquarters, the trial judge read the stipulation between the prosecutor and the defendant which indicated that immunity would be given for the charge of "criminal facilitation." The record indicates that defense counsel believed that it was correct that immunity was limited to the facilitation after the fact.

It must be noted that the term "criminal facilitation after the fact" was used by the parties to the plea agreement. No such term exists in our view. Our examination of the record indicates that they actually contemplated immunity from those charges involving accessory culpability found in KRS 520.120 and .130. In a pretrial hearing, the defense counsel admitted that they didn't say he wouldn't be prosecuted for murder. The prosecutor agreed that Smith had immunity to "criminal facilitation after the fact" but not to any other charge. Accordingly, the trial judge properly overruled Smith's motion to dismiss the indictment because there was no substantial evidence of an agreement to total immunity.

The decision of the trial court was correct because the essence of an agreement must be demonstrated. *See Santobello v.*

*New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); and *Anderson v. Commonwealth,* Ky. 507 S.W.2d 187 (1974).

The third argument is that it was error for the trial judge to overrule a motion to suppress statements he made to the jailer and coroner.

Following Smith's initial statement at the jail, he was taken to the Kentucky State Police Post where he gave an indentical statement which was subsequently read to the jury at trial. Smith argues that his second statement was inadmissible as it was clearly the result of and tainted by his first statement. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We believe Smith's contention is misplaced. Any error alleged to have occurred because of Smith's first statement is harmless beyond a reasonable doubt. Smith's identical second statement was made with benefit of counsel and made only after Smith and his attorney had received adequate assurances that Smith would receive a suitable plea agreement.

The only inducement for the second statement was the agreement offered by the prosecutor regarding the criminal facilitation after the fact. The prosecutor never offered absolute or total immunity on all possible charges arising from the murder. In order to determine voluntariness, the totality of the circumstances must be considered. *Allee v. Commonwealth,* Ky. 454 S.W.2d 336 (1970); *Walker v. Commonwealth,* Ky. 561 S.W.2d 656 (1977).

The totality of circumstances surrounding the second statement make it voluntary even though *Miranda* rights were not read to Smith because his attorney was present. The attorney agreed with the prosecution's offer and stated that he had had ample opportunity to consult with his client.

The trial judge complied with RCr 9.78 by conducting a suppression hearing. His findings which were entered into the record are supported by substantial evidence and are conclusive. The record makes it abundantly clear that the only inducement was the agreement offered by the Commonwealth's Attorney and accepted by Smith and his counsel. The trial court's determination that Smith's statements were made voluntarily is not clearly erroneous and will not be disturbed. *Walker, supra.*

Smith's next argument is that the prosecution failed to properly preserve potentially exculpatory physical evidence in its possession.

Prior to trial the defense moved to preserve all evidence recovered in the investigation by the prosecutor which included various items retrieved from the victim's house and laboratory samples of the victim's blood, saliva, vaginal swabs and smears and control swabs. A second motion requesting the court to order the production of laboratory samples was filed. The prosecution responded that the laboratory samples were either no longer in existence or had no value for the purpose of chemical analysis. The swabs were consumed in testing and rendered useless for the purpose of reexamination. A third motion was filed to produce the items recovered from the victim's house which consisted of an orange pillow, a gold and white towel, a pair of green panties, a pair of denim shorts, a halter top, steam iron and a tee shirt. The prosecution did not produce the items because it said that they had been lost due to a relocation of the State Police Headquarters between 1977 and 1985.

We are not convinced by Smith's arguments because the tangible items were of no evidentiary value and the results of the testing of the laboratory samples were available. The absence of the actual items and the samples did not prejudice Smith. *Green v. Commonwealth,* Ky.App. 684 S.W.2d 13 (1984).

At trial, McClanahan, a serologist employed by the State Crime Laboratory in 1977, testified about the blood type found at the scene. The results of the tests were made available to Smith. McClanahan testified that he had performed tests and the

samples were consumed. Slides were made from these swabs and the slides were indefinitely kept at the State Crime laboratory in Frankfort. The existence of the slides was unknown to the prosecution until McClanahan testified. Smith made no independent investigation to ascertain whether the slides were even made despite the fact that the prosecution informed him that lab personnel were available for interrogation. Smith had an expert witness who testified after reviewing McClanahan's notes. The jury heard the conclusions of both expert witnesses and reached a decision as to the credibility of each.

There is no evidence that the prosecution intentionally destroyed or suppressed any evidence. The blood samples, swabs and all items from the victim's house were preserved and analyzed. All the known and existing evidence was produced at Smith's request. The scientific procedure used in testing the laboratory samples was reliable. The test results were admissible as evidence. Smith argues that the results of the laboratory testing of the blood samples and the swabs should have been excluded.

The chain of custody of the samples and the swabs was correctly proven. This issue was not properly preserved for appellate review because the defense failed to object on the ground that the integrity of the evidence was not established. RCr 9.22; *Hockenbury, supra.* The contention by Smith that a manifest injustice resulted pursuant to RCr 10.26 is not convincing.

It was not reversible error for the trial judge to refuse a request for a change of venue. A hearing was conducted and both counsel and the trial judge decided that a continuance would cure any prejudice resulting from the two newspaper articles introduced by the defense. Individual jurors were questioned. During voir dire numerous questions were directed to the issues of fairness and preconceived opinions of guilt. A careful examination of the record indicates that there was no abuse of discretion by the trial judge in refusing to change venue. *Hurley v. Commonwealth,*

Ky. 451 S.W.2d 838 (1970); *Payne v. Commonwealth,* Ky. 623 S.W.2d 867 (1981).

Smith argues that he was guilty of tampering with physical evidence, KRS 524.-100(1)(a), and was entitled to an instruction on that crime. He says he wiped blood and fingerprints from certain items in the victim's house and concealed the murder weapon and a companion's clothes. The Commonwealth objected to the requested instruction based upon the stipulated agreement in which Smith had been granted immunity from prosecution.

■ Smith was not charged in the indictment with tampering with evidence, KRS 524.100(1)(a), and is not entitled to an instruction. *Carsons v. Commonwealth,* 243 Ky. 1, 47 S.W.2d 997 (1931); *Abner v. Commonwealth,* 309 Ky. 351, 217 S.W.2d 806 (1949). Smith's transcribed statements which were read into evidence were not sufficient to warrant the requested instructions. Smith's contention that his convictions must be reversed for want of the foregoing instruction is unconvincing. Smith argues that if the jury believed that he was guilty of some offense, that they would most likely resolve any doubt in favor of conviction of the charged offenses. In other words, lack of a "lesser evil" in the possibility of sanctions within the jury's discretion inexorably led to Smith's convictions and denied him due process of law.

Smith's theory of the case that he covered up evidence after another had committed the crime was before the jury. If the jury believed Smith's statements, Smith could not be found guilty of murder or rape. He was not prejudiced. There was no reversible error.

■ The evidence does not support an instruction on the lesser-included offense of criminal facilitation. Smith admitted that he returned to the Allen home for one reason, sex. He was not an innocent third party. On the other hand, he claims that because his gun was in plain view of the alleged murderer, he provided the means to commit the murder. He never asserts that he knew of his companion's intentions. In the absence of such knowledge, Smith

could not be guilty of criminal facilitation to murder. KRS 506.080 requires knowledge of intent to commit a crime. Smith was not entitled to the instruction on criminal facilitation of either rape or murder.

The judgment of the circuit court is affirmed.

STEPHENS, C.J., and LAMBERT, LEIBSON, STEPHENSON, and WINERSHEIMER, JJ., concur.

GANT and VANCE, JJ., concur in result only.